This video is a work of fiction. Any resemblance to actual people, events, or events is purely coincidental. This video is a work of fiction. Any resemblance to actual people, events, or events is purely coincidental. This video is a work of fiction. Any resemblance to actual people, events, or events is purely coincidental. I am here representing the appellants, Larry and Cheryl Jesinoski. The Jesinoskis are asking this court to set aside the Honorable Donovan Frank's summary judgment ruling for three primary reasons. First, we believe the court erred in granting summary judgment because the acknowledgment the court relied on was ambiguous. Second, even if it was not ambiguous, appellees are only provided a rebuttable presumption of delivery. And the Jesinoskis provided sufficient evidence to rebut that presumption. Third, there are material facts in dispute as to appellant's ability to tender and the applicability of offsets related to that tender. I thought the Jesinoskis admitted they couldn't tender. The testimony in the depositions were that they could not write a check for $611,000 that day. What did they say? We could get a mortgage or was there any, I mean, was there any evidence presented to the district court of an ability to tender other than through an $800,000 offset? Yes, we actually argued a few things on that point. Number one, yes, we did argue that there should be an offset of the attorney's fees, but they did have actual damages of roughly $142,000. In the depositions, they testified as to certain investment accounts. Larry Jesinoski, excuse me, in his deposition testified that he had a retirement account of about $125,000 to $150,000. He testified that Ms. Jesinoski makes roughly $60,000 a year. He makes anywhere from $60,000 to $120,000 a year. And then in Ms. Jesinoski's deposition, she testified that she had an investment account in her own name of roughly $150,000. It's our position that based upon that, there is a material fact disputing whether or not, absent the actual damages, whether or not they could actually tender. Even setting aside the issue of attorney's fees. Why didn't they go out and get a loan commitment and come into the court and say, if they release the mortgage, we can get a loan for $611,000 based upon all the factors you just mentioned? Well, because the bank has never acknowledged that my clients were entitled to the offset of those damages or that the rescission in this case was valid. So that $142,000 of damages was never going to be taken into consideration by the bank. And that was always the issue. The bank had always said- This is the district court's discretion in the suit, isn't it? You can't say that when you're suing because rescission wasn't allowed, you can't say, well, because they wouldn't allow rescission, we don't have to tender when the court is a matter of exercises. It's equitable discretion in the litigation.  It would require a tender. We, I think we're melding a couple issues there. But my clients have never maintained that- That's the one that matters to me. I don't care about whether you could have tendered before or after. Well, and my clients have always maintained they will tender, that they could tender, that they have- You have to do it to the court. I'm sorry? The court said you got to do it in the case. Well, no, that's not what Judge Frank said. Judge Frank said that he essentially, in his order, said they admitted that they could not tender, and what he was taking from was the limited deposition testimony that we couldn't cut you a check for $611,000 today. Our case, what is it? I thought we had a case that said the statutory reversal of the tender business does not apply if the district court still has discretion. There is case law out there that does say that the court does maintain discretion, equitable discretion on how they remedy or fashion rescission. We believe that this case, which went up to the United States Supreme Court, forecloses that opportunity. The most recent Jesignoski decision that was up at the United States Supreme Court, we believe in that decision, they specifically said that the language of the act does not give the right to circumvent statutory procedure in fashioning rescission. The act itself says, upon rescission- So that overruled our Hughes Development Company decision, 938 F3rd? Or no, I'm- It didn't specifically overrule, but I believe in practice it did, Your Honor. So you're saying that the creditor has to release the mortgage without tender? Yes, that's exactly what the act says. It says- So what happens if they don't pay the money then? The creditor is totally out? No, the creditor has a claim against the homeowner for what they didn't tender if they do not tender. But the act itself specifically says there's no ambiguity in the language of that act that says the lender has to release that security interest within 20 days. So all these cases from all over the country that say that the court has an equitable right to fashion a relief that requires that upon release of the mortgage there be a tender, you say those have all been overruled by the Supreme Court? I think it's finally been addressed by this latest case in Jesignoski. I don't think it's ever been addressed before by our highest court. And it's in the last- the second to last paragraph of the decision. The court goes into some detail saying that the common law ability to craft an equitable rescission is not circumvented by- is- excuse me- that- I'll just quote it for you, Your Honor. It is also true that the act disclaims the common law condition precedent to rescission at law that the borrower tendered the proceeds received under the transaction. You know, I read the- I actually read the summary- the hearing transcript and I share Judge Frank's frustration that there isn't some way out of this morass that, you know, I know the Jesignoskis don't feel that- they feel they've been unfairly tarnished, that they're trying to get a house for nothing and- but they have lived in it for 10 years without paying anything, including even- as I understand, they even haven't paid the insurance. And I mean, isn't there any way out of this morass? You know, I'm sure smarter minds have tried to come up with that, Your Honor, but every- at every turn and in essentially every case, that's what the lender does. They come up here and they say, well, they've been living in this house for this long. At some point, there's a point of no return when a plaintiff is trying to get relief. But to the specific facts of our case, our clients tried to make payments. They tried to make insurance payments. Those payments were not accepted by the bank and Judge Frank even- we went into some discussion about that in oral argument and there was a lengthy back and forth about that and he even questioned the bank and, well, you wouldn't accept those but it is not central to what this case is about. We believe that that Jezinoski decision, at a minimum, is clear guidance on how this court should act as it relates to the ability of rescission and who needs to act first. To kind of go back, I need to touch on- What do you suggest we rule? How do we rule? Well, that was only one basis for why Judge Frank tossed this case out. But as to that point, I think it should be remanded for a trial on the issue of whether or not they can tender. If that's the case, that this court does not believe that what I've quoted here or the decision that they made overrides or overrules the prior decisions. I think we need a factual determination made about whether or not they actually can tender, number one. So what would happen here, as I understand it, is if you win, you go back and there's a trial, and I don't know if it's a jury trial, but there's a trial of some kind on whether or not they got four notices or two notices. Correct. If the factual determination is they get two notices, then the rescission was valid, you get statutory damages, attorney's fees, and you're required to tender. Well, they're required to release the security interest first, then we're required to tender. But you've got to pay the $611,000, and they've got to release the security interest. Yes, only to the extent that the $611,000 will be offset by those damages and potentially attorney's fees as well. The attorney's fees, I agree, would be under the court's discretion on what they're going to order, but there are certain offsets. And there are cases that do talk about net proceeds on tender versus gross proceeds. So it's not just that the homeowner has to walk in with this check for $611,000. That's kind of been our point the entire time. But those cases don't say you have to walk in with a check. They say that you have to be able to show that you can tender, not that you actually have to deposit $611,000 with the clerk of court. A loan commitment that says if lender releases, we'll make a loan plus your down payment. You said they got $300,000 in investment accounts. That between a loan and the $300,000, we got the money. Sure. For a home that was purchased for $611,000, if there's no security interest on that, I can virtually assure that every homeowner would be able to walk in and say, I can tender. But why don't you just do it? Your Honor, that's never really been an issue in this case because the fight has always been whether or not the rescission is valid, whether or not they had the right to rescind. And that has always hinged on whether or not they were given the four copies of the notice or only two. Again, to kind of backtrack on Judge Frank's decision, we believe he incorrectly decided that on two other bases. The first one is that we believe that acknowledgment is vague. If you look at... What's the standard of review for that? Vague or ambiguous? I thought the issue was ambiguous. It's whether or not it's vague or ambiguous. Vague is not the right word. Well, ambiguous is what the case law uses, yes. I guess I'm using that a little bit interchangeably. What's the standard of review? The standard of review on this would be de novo. Why? Because it was issued on a summary judgment motion and the case law... Yes, of course, summary judgment is reviewed de novo. Issues within the summary judgment dispute have standards of review. It is whether or not the acknowledgment could be read two different ways by two different people. There's a case... Does the court decide that? A jury decides. It's for the fact finder. A jury decides whether or not the contract... The court would decide whether or not it's ambiguous. Right. It's a matter of... I mean, you just misstated contract law, so why doesn't contract law control? My understanding, your honor, is that... And I guess I didn't flush this out in my argument, but... Whether or not the contract is ambiguous. Whether or not the contract is ambiguous, the court will make that decision. And Judge Frank did. Judge Frank... You can't criticize him for not letting that go to a jury if it's a question of law. Well, I think he misapplied the case law to these facts. If it's ambiguous... Well, how ambiguous... There's a question between... The first question is whether it's ambiguous. Second question is, even if it's a little bit ambiguous, does that destroy the presumption? You got to win both of those, or you got to win your alternative that we did rebut the presumption. No, and I'll clarify the argument on that. Our original argument was that the acknowledgment was ambiguous. Setting that completely aside, Judge Frank, he ruled that with... You argued it. You kind of set it aside. Well, no, but... I can concede it for the purpose of this argument, because if we get to the point of whether or not a rebuttable presumption is appropriate, it doesn't matter as to the language of the acknowledgment. So assuming that this acknowledgment is valid and says what Judge Frank says it says, then Judge Frank would apply a rebuttable presumption that my I brought your... From your brief, you take him on on every sub-issue, and so I'm trying to take him one at a time. You say, well, I don't need that one. So okay, then do you concede it or don't you concede it? If you don't concede ambiguity, then isn't it an issue of law? And so we have to... Or is it... I mean, you can say it's not in the body of the heavens of the purpose of this consumer protection statute, and let's let juries decide it. I'll concede the language of the acknowledgment to this point, Your Honor, in that the real crux of the argument is whether or not the rebuttable presumption was applied and which case is our case more in like. Is it like the most recent Kieran decision, or is it like the Peterson decision? You mean our Kieran decision? Correct. Correct. And I think there's a stark contrast between those two. I believe our case is much more aligned with the Peterson case than the Kieran case that just came out. I'm happy to go through the differences, but I notice I am out of time. Thank you. I couldn't hear you. I'm sorry. You're out of time. Thank you. We'll hear from the appellate. Good morning, Your Honor. May it please the Court? Brian Schmalzbeck for Bank of America. We're here today because the plaintiffs say that 10 years ago, they received two copies of a document they never used instead of four. Why shouldn't we say that Judge Frank got the cart before the horse in this case, in that he says you can't win because you can't tender, but the countervailing argument is, yes, but Bank of America to this day refuses to acknowledge there was ever a valid rescission. They literally have taken this case all the way to the United States Supreme Court. They've paid $1 million in attorney's fees for 10 years. How could anybody ever tender under those circumstances? Well, Your Honor, I'll take it one step at a time. I mean, shouldn't you reach the issue of, okay, there's a rescission, it's a valid rescission, now give them some reasonable time to tender? Well, Your Honor, I think the reason to address the tender issue first is because, as you said, it's a way out of the morass here. And it's frankly an easier question in light of this Court's decision in Hughes, because the district court here did exactly what this Court authorized in Hughes. That is, it conditioned rescission upon the debtor's prior return of the principal. And that holding, that is a straightforward application of Section 1635B. How can you do it when there's never been any acknowledgement that they even sent a valid notice? Your Honor, because these are separate issues. You can assume for the tender issue without deciding that there was a violation that they were entitled to notice. And so that's the basis for reaching the tender argument. I mean, but you've never even acknowledged, you weren't even willing to acknowledge that they sent you a notice of rescission. No, Your Honor. Bank of America responded. I mean, a valid notice of rescission. Correct. A valid notice. And we can talk about the reasons for that. But I think the easiest way to cut through the knot in this case is the way Judge Frank did, which is straight through the tender issue. And the reason you can do that easily is because it's right there in the last sentence of Section 1635B, which says that 1635B goes through the procedures that apply in rescission. But the last sentence is critical. It says that these procedures apply, quote, except when otherwise ordered by a court. And when the Supreme Court had this case, the Jastrzynowski's lawyer in the Supreme Court freely admitted in the oral argument transcript in pages 7 to 8 that that sentence gives district courts the flexibility to reorder the steps in rescission, just like the district court did here on remand, to prevent unfairness to the lender. That's a little bit of taking dicta for the Supreme Court to a new extreme when you say there's something that the Supreme Court admitted in an oral argument? No, Your Honor. The Jastrzynowski's did at oral argument. So the reason it's important to reach that issue is because that's exactly what the district court did here. It said, you can rescind, but I'm going to use my equitable discretion in the last sentence of Section 1635B to reorder the steps and make sure that if I allow rescission to go forward, that you can actually return the parties to the status quo, because that's the point of rescission, rather than transforming the lender into an unsecured creditor. And that's exactly why Congress in 1980 added that sentence to the end of 1635B, to ensure that the lender could be returned to the status quo. And so even, and the equities support that decision here, even assuming that receiving two copies versus four copies is a violation. It's a paper-thin one, and it did zero harm to the Jastrzynowski's here. In fact, they didn't even use the two copies they acknowledge now they received when they purported to rescind. They created their own rescission notice, as they're entitled to do. And so the district court was fully justified in thinking that if they want to rescind on that ground, on this two versus four ground, that they can't strip the lender of the security that it bargained for. Now, summary judgment was proper on that ground because the plaintiffs have not met their burden of showing evidence that they can meet that condition. As you said, Judge Molloy, they've offered no evidence that they have any lender commitment who would actually loan them the money to do that. And I'd like to correct something that Mr. Bettina said. This house was not purchased for $611,000. That amount was a refinance amount that included additional funds for them to pay off other debt. So I don't think you can draw any conclusion from the size of the loan that they would be able to get a similar loan today. But also, as you pointed out, they both conceded point blank in each of their depositions that they can't tender the loan proceeds now. And they admitted that no family or friends could help them tender. And if they had evidence that they actually have the means now to meet the tender requirement, I would have expected to see it in the reply brief. But the reply brief says nothing about the evidence they have in this case that will help them meet that tender requirement for a $611,000 loan. Now, the second way out of the morass here is to address the straightforward legal threshold of this whole case, which is, do you get an extra three years to rescind merely because you received two copies of the document instead of four? There's two problems with that. First, there's no support in the text of Regulation Z. If the regulation were truly intended to impose this non sequitur, that you get three extra years to rescind because you receive two copies of a document instead of four, you would expect the regulation to say so rather clearly. But it didn't. To the contrary, the regulation says that the rescission period is only extended if the borrower does not receive the required notice. That's notice in the singular, not copies in the plural. And that makes perfect sense. But there's a pretty extensive body of case law dealing with the Truth in Lending Act that holds creditors to a very high standard and a very strict standard. Yes, Your Honor. And the reason the case law does that is because the Truth in Lending Act is supposed to be a disclosure statute. It is supposed to ensure that borrowers receive full notice of all the information that they're entitled to. And that's exactly what happened here. You can see on page 283 the actual notice in this case. The borrowers undisputably received that notice. And it includes all the information that's required to be included. The top half of the rescission notice matches the model form exactly. And it makes perfect sense that the Truth in Lending Act and Regulation Z would require notice. Because a borrower who doesn't receive notice will have a very difficult time effectuating his rescission rights. But a borrower who receives two copies of that rescission notice will find it every bit as easy to exercise those rights as if they had received four copies. And the model form — This is the notice that says you have three days, right? That's right, Your Honor. And the model form confirms that that's right. The model form, which is itself part of Regulation Z, it's a single sheet of paper with no reference to multiple copies. And it says, borrowers, you have three days to rescind from the date you received this notice of your right to cancel. And it's undisputed that the Jasnowskis received this notice of their right to cancel at page 283. And the second reason for addressing this issue is that the Truth in Lending Act does not penalize harmless, hyper-technical violations. As I said, it's a disclosure statute. But more copies doesn't mean more disclosure. And that's why the Fourth Circuit got it just right in Shelton, where it said a lender who provides fewer than four copies in exactly this scenario still substantially complies with the Truth in Lending Act, because that's at most a hyper-technical violation. And as I said, it's especially harmless here, where the borrowers didn't even use the two copies they now admit they received. Council suggested that we did not raise this argument below. I'm afraid he's mistaken about that. We raised this in our summary judgment brief at pages 49 to 50 of the Joint Appendix. He responded in his opposition at pages 306 to 307. It came up again in the reply brief at page 350. And then on the record at the summary judgment hearing, he acknowledged that we had made this argument and acknowledged that we had cited many of the same cases we cite in our brief. That's at page 390. So the Court can and should take this opportunity to address the threshold legal question, rather than allow what happened here, litigation over the course of many years, all the way through summary judgment, on what will ultimately prove to be futile legal theory. Now last, I'd like to address the effect of this Court's recent decision in Kieran on this case. Kieran confirms that summary judgment was proper on the ground that there's no genuine dispute that the Jastunowskis received two copies apiece of the rescission notice. They signed an acknowledgment. Each of them signed the acknowledgment. And that acknowledgment contains nearly the same language as the acknowledgment in Kieran. And Kieran held that that language in the acknowledgment created the presumption under Section 1635C that the borrowers had each received their own set of documents. Now the Jastunowskis tried to rebut that presumption using the so-called envelope theory, but Kieran squarely holds that that theory does not rebut the presumption of Section 1635C. And in fact, this is an even weaker case than Kieran. In Kieran, at least the Kierans could provide affidavits testifying based on their own personal knowledge of how many copies were in the closing file when they opened it up three years later. Not so here. The Jastunowskis have no personal knowledge of how many copies of the notice they actually received at closing. And more importantly and different from Kieran, they don't even have personal knowledge of how many copies were in the closing file when they opened it up in February of 2010. The only evidence in this case of the number of copies in the file in February 2010 is what they say someone else said. It's what they say Mr. Heinsman said. And because they're trying to use Mr. Heinsman's out-of-court statements to prove the truth of the matter asserted, that's classic hearsay. And they have never identified any exception that would So, for that reason, the district court correctly granted summary judgment, correctly held that the presumption of receipt stands, and if the court has no further questions, we ask you to affirm. Was the, um, after the Jastunowskis gave the file to Heinsman, what happened to the actual file, do we know? The record is sketchy on that point, Your Honor. What we do know is that there are pages missing from the closing file record that's in the joint appendix. You can see at page 105 where Mr. Jastunowski admits that there are pages missing, and he doesn't know why. And more importantly, at page 232 of the record, Mr. Bettina says, we cannot represent that this is the complete and accurate closing file. So there is no evidence here. Even if it survives summary judgment. Thank you for your argument. Thank you, Your Honor. I believe counsel used all his time. Do we have questions that we would like to address? I think we're fine. Very good. The case is submitted, and we will take it under consideration.